## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT E. MARTINEZ, | : | CIVIL ACTION NO. 1:20-CV-1759 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| JASON BERFIELD, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Albert E. Martinez, alleges that defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights during and after a five-day period when he was placed in a "dry cell" based on suspicions that he was in possession of contraband.[1]  Defendants have moved for summary judgment.  The motion will be granted in part and denied in part.

## I.  Procedural History

Martinez was incarcerated in Camp Hill State Correctional Institution ("SCI-Camp Hill") at all relevant times.  Martinez filed this case on September 25, 2020.

---

[1] "A 'dry cell' is a cell that lacks water—all standing water has been drained from the toilet, the room's water supply has been shut off, and the sink and toilet have been capped to prevent inmate access.  An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison. Dry cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved."  Thomas v. Tice, 948 F.3d 133, 137 (3d Cir. 2020).

(Doc. 1).  According to the allegations in his complaint,[2] prison officials allegedly escorted Martinez from the prison's visitation room to a personal observation cell on January 17, 2019, after officials purportedly witnessed him swallow an unknown object.  (Id. ¶ 11).  When he arrived in the cell, prison officials allegedly stripped him naked, gave him a smock to wear, and handcuffed him to the floor on a mattress with no bedding.  (Id. ¶ 12).  A few hours later, a nurse in the prison brought him an unknown medicine and instructed him to ingest it.  (Id. ¶ 13).  Martinez believed that the medication was a laxative.  (Id.)  After taking the medicine, Martinez allegedly defecated on himself multiple times.  (Id.)  Correctional officers who were present purportedly did not allow Martinez to clean himself and instead forced him to remain lying on the mattress with feces on his legs and genitals.  (Id.)

Martinez remained in the observation cell the following day, at which point his handcuffs were so tight on his right wrist that they purportedly caused his wrist to bleed and caused him to temporarily lose sensation in his arm.  (Id. ¶ 14).  Martinez asked officials to clean the wound on his wrist, but purportedly had to wait approximately two to four hours until a nurse did so.  (Id.)  Correctional officers allegedly told Martinez, "We will loosen the cuffs when you give us the contraband."  (Id.)

During Martinez's second day in the observation cell, defendants Evans and Berfield, a security captain and security lieutenant in the prison, purportedly

---

[2] Martinez's allegations are provided solely to aid the reader's understanding of the nature of his claims.  Nothing in this section shall be construed as a finding that the allegations in the complaint are undisputed.

ordered their subordinate correctional officers to confiscate a blanket that officers had previously given Martinez.  (Id. ¶ 15).  The removal of the blanket allegedly caused Martinez to be extremely cold because the outside temperature was below zero degrees.  (Id.)  Martinez was allegedly exposed to the cold without a blanket for four nights.  (Id.)  He was also allegedly subjected to continuous lighting throughout every night in the cell.  (Id.)

Prison officials allegedly compelled Martinez to defecate and urinate in front of them repeatedly while he was in the observation cell.  (Id. ¶ 16).  Several female employees in the prison, including defendant Fultz, a shift lieutenant, purportedly observed Martinez defecating and urinating.  (Id.)  After testing and examining Martinez's bowel movements and urine, prison officials purportedly determined that he had not ingested any contraband.  (Id.)  The complaint alleges that throughout his time in the observation cell, correctional officers outside the cell repeatedly taunted him by asking him, "[a]re you cold?" and "[h]ow does it feel to sleep in your own shit?"  (Id. ¶ 17).  Martinez repeatedly requested heat, a blanket, soap, water, and medical attention, but was purportedly denied all of these things while in the observation cell.  (Id.)

On January 22, 2019, after continued exposure to the conditions of the observation cell, Martinez allegedly began to demonstrate suicidal thoughts and prison officials transferred him to an observation cell.  (Id. ¶ 18).  After several days on suicide watch, prison officials allegedly transferred him to solitary confinement for thirty days, despite not finding any contraband.  (Id.)

In March 2019, defendant Berfield allegedly directed correctional officers to confiscate a television, radio, and trunk that Martinez had previously purchased from the prison's commissary. (Id. ¶ 19). Berfield purportedly told Martinez that he would return the property if Martinez agreed to withdraw a grievance he had filed regarding the events of January 17, 2019. (Id.) Martinez refused to do so, and he was subsequently transferred to another institution without the confiscated property. (Id.)

At some point after the events of January 2019, Martinez allegedly filed a grievance regarding the purported invasion of his privacy by female prison officials observing him defecating and urinating. (Id. ¶ 20). On July 29, 2019, defendant Mihal, a lieutenant in the prison, allegedly retaliated against Martinez for this grievance by bringing misconduct charges against him alleging that the grievance contained false information. (Id.)

The complaint asserts claims for unconstitutional conditions of confinement in violation of the Eighth Amendment against defendants Berfield, Evans, Hardy, and multiple John Doe defendants; deprivation of personal property in violation of the Fourteenth Amendment against defendant Berfield; invasion of privacy in violation of the Fourth Amendment by defendant Fultz and several Jane Doe defendants; and retaliation in violation of the First Amendment by defendant Mihal. (Id. at 7-9). Martinez seeks declaratory relief and damages. The named defendants answered the complaint on February 11, 2021. (Doc. 15).

Defendants moved for summary judgment on July 31, 2023. (Doc. 66). The court denied the motion without prejudice, concluding that additional discovery

was necessary based on a motion to compel discovery that Martinez had filed. (Docs. 81-82). The court reopened discovery, ordered defendants to produce the relevant discovery, and granted defendants leave to file a renewed motion for summary judgment after the close of discovery. (Doc. 82).

Defendants filed a renewed motion for summary judgment on February 29, 2024. (Doc. 85). After being granted an extension of time, defendants filed a brief in support of the motion and a statement of material facts as required by Local Rule 56.1 on April 12, 2024. (Docs. 90-91). Martinez filed a brief in opposition to the motion for summary judgment on August 15, 2024, after the court had granted him several extensions of time. (Doc. 99). Defendants filed a reply brief on September 20, 2024, making the motion ripe for review. (Doc. 102).

## II.   **Unidentified Defendants**

As a preliminary matter, the court will *sua sponte* dismiss Martinez's claims against all John and Jane Doe defendants because he did not identify them prior to the discovery deadline. Claims against John or Jane Doe defendants are properly dismissed when the defendants have not been identified prior to the discovery deadline. See, e.g., Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (nonprecedential);[3] Ornstein v. Warden, 3:18-CV-2042, 2021 WL 4290180, at *3 n.35 (M.D. Pa. Sept. 21, 2021); King v. Mansfield Univ. of Pa., No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014).

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

III.   <u>**Material Facts**</u>[4]

Martinez was housed in SCI-Camp Hill in January 2019.  (Doc. 91 ¶ 1).  All named defendants were employed at SCI-Camp Hill during this time.  (<u>Id.</u> ¶¶ 2-6).  On January 17, 2019, he was transferred to a "dry cell" based on prison staff members' belief that he had obtained contraband from an outside visitor.  (<u>Id.</u> ¶ 7).  An x-ray performed on January 18, 2019, could not rule out the presence of contraband in Martinez's body.  (<u>Id.</u>)[5]  Martinez remained in the dry cell until January 22, 2019, when he was transferred to a psychiatric observation cell after expressing suicidal ideations.  (<u>Id.</u> ¶ 9).  Martinez was offered exercise and checked by medical officials at appropriate times while in was in the dry cell.  (<u>Id.</u> ¶ 10).

---

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  <u>Id.</u>  Defendants have filed a statement of material facts as required by Rule 56.1.  (Doc. 91).  Martinez has filed a document that purports to respond to defendants' statement, but instead of responding to the numbered paragraphs in defendants' statement, it simply gives Martinez's own conclusory assertions of what legal issues are in dispute.  (<u>See</u> Doc. 99-12).  Because Martinez's statement does not comply with Local Rule 56.1, the court deems the facts set out in defendants' statement admitted.  (<u>See</u> M.D. PA. L.R. 56.1).  The court will cite directly to defendants' statement of material facts where applicable.

[5] Defendants' statement of facts states that the x-ray was performed on January 18, 2024.  (<u>Id.</u>)  This appears to be a typographical error because the x-ray report attached to the statement indicates that the x-ray was performed on January 18, 2019.  (<u>See</u> Doc. 91-5).  The court accordingly deems undisputed the factual contention that the x-ray was performed on January 18, 2019, rather than January 18, 2024.

After Martinez complained that female staff members had observed him defecating and urinating while in the dry cell, prison staff investigated his claim and determined that it was unfounded.  (Id. ¶ 11).  Martinez filed several grievances related to the facts of this case.  (Id. ¶ 12).  None of these grievances were appealed through all stages of administrative review.  (Id. ¶ 23).

IV.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

**V.**     <u>**Discussion**</u>

Martinez brings his federal constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  <u>Kneipp</u>, 95 F.3d at 1204 (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants argue that they are entitled to summary judgment because (1) Martinez failed to exhaust administrative remedies; (2) he has failed to show the personal involvement of defendants Hardy and Fultz; and (3) he has failed to establish the elements of his claims.  (Doc. 90).

Having reviewed the parties' summary judgment arguments and the evidence of record, we conclude that defendants are entitled to summary judgment on Martinez's First, Fourth, and Fourteenth Amendment claims.[6]  We conclude,

---

[6] The court will decide these claims on the merits without addressing whether Martinez exhausted administrative remedies.  Exhaustion of administrative remedies under the PLRA is "non-jurisdictional" in nature.  <u>Rinaldi v. United States</u>, 904 F.3d 257, 265 (2018).  When an exhaustion rule is non-jurisdictional, courts may grant summary judgment to a defendant on the merits of a plaintiff's claim without deciding whether the plaintiff has exhausted administrative remedies.  <u>See</u> <u>Santos-Zacaria v. Garland</u>, 598 U.S. 411, 416 (2023).

however, that genuine issues of material fact preclude summary judgment on Martinez's Eighth Amendment claim.  We address Martinez's claims *seriatim*.

### A.     First Amendment – Retaliation

Claims that a defendant has retaliated against a plaintiff in violation of the First Amendment require proof that: (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Causation may be shown by establishing either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing.  Dondero v. Lower Milford Twp., 5 F.4th 355, 361-62 (3d Cir. 2021) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  Causation may also be implied by "the record as a whole."  Id. (citing DeFlaminis, 480 F.3d at 267).  Even if a plaintiff establishes the elements of a retaliation claim, defendant prison officials "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

Martinez's retaliation claim alleges that defendant Mihal retaliated against him by filing a misconduct charge asserting that Martinez provided false information when he complained that defendant Fultz and other female prison employees viewed him defecating and urinating.  (See Doc. 1 ¶ 20).  Retaliatory

misconduct claims fail when there is some evidence that the prisoner plaintiff committed the underlying infraction.  See, e.g., Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (nonprecedential) (holding that retaliatory misconduct claim fails when there is some evidence to support the misconduct charge); Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory misconduct charge failed because there was a quantum of evidence indicating that prisoner plaintiff committed underlying misconduct).  Here, the record reflects that there was some evidence to support Mihal's misconduct charges against Martinez—Fultz and other employees stated during an internal investigation that female employees had not viewed Martinez defecating and urinating.  (See Doc. 91-7).  We will accordingly grant summary judgment on the retaliation claim because it fails as a matter of law.

**B.    Fourth Amendment – Right to Bodily Privacy**

Martinez's Fourth Amendment claim asserts that defendant Fultz violated his right to bodily privacy because she is a woman and she observed Martinez defecating and urinating while he was in the dry cell.  (Doc. 1 ¶ 26).  Our court of appeals has recognized that prison inmates have a limited right to bodily privacy under the Fourth Amendment during their incarceration.  Parkell v. Danberg, 833 F.3d 313, 325 (3d Cir. 2016).  The "contours" of this right, however, are "very narrow," and courts considering claims alleging violation of the right must balance the right against the prison's institutional needs.  Id.

Neither the Supreme Court nor our court of appeals has held that the Fourth Amendment right to bodily privacy protects an inmate's right to be free from prison officials observing them using the restroom.  Several courts in this district,

10

however, have recently held that an inmate's right to bodily privacy does not extend to some situations in which prison officials have observed an inmate's naked body. See Ayers v. Warden of LCCF, No. 3:24-CV-1184, 2024 WL 3498355, at *3 (M.D. Pa. July 22, 2024) (Munley, J.) (holding that Fourth Amendment right to bodily privacy does not extend to "claim regarding the possibility of the video camera revealing him in the nude and on a continuous basis"); Drumgo v. Reese, No. 3:20-CV-2434, 2022 WL 4295442, at *16 (M.D. Pa. May 20, 2022) (Mehalchick, M.J.) (holding that placement of plaintiff in dry cell and resulting search of his feces and urine for contraband did not violate Fourth Amendment right to bodily privacy), *report and recommendation adopted*, No. 3:20-CV-2434, 2022 WL 3045310, at *2 (M.D. Pa. Aug. 2, 2022) (Brann, C.J.).  Based on these persuasive authorities, we find that the Fourth Amendment right to bodily privacy does not extend to Martinez's claim alleging isolated incidents of a correctional officer of the opposite sex observing him defecating and urinating.  Furthermore, even if the Fourth Amendment does protect such a right, defendant Fultz would be entitled to qualified immunity from Martinez's claim because that right was not clearly established by Supreme Court or Third Circuit precedent at the time of the alleged violation.  Hence, we will grant the motion for summary judgment with respect to Martinez's Fourth Amendment claim.

### C.     Fourteenth Amendment – Deprivation of Property

We will also grant the motion for summary judgment on Martinez's Fourteenth Amendment due process claim.  Due process claims based on destruction or deprivation of a prisoner's personal property fail as a matter of law if

the government provides adequate post-deprivation procedures to remedy the loss of the property.  See Hudson v. Palmer, 468 U.S. 517, 533-34 (1984).  The Third Circuit has held that the DOC's grievance process generally provides an adequate post-deprivation remedy for the deprivation of property.  See Pressley v. Johnson, 268 F. App'x 181, 183 (3d Cir. 2008) (nonprecedential); Jordan v. Horn, 165 F. App'x 979, 981 (3d Cir. 2006) (nonprecedential).  Martinez has not provided any evidence to show that the grievance process was inadequate in this case.

      **D.**      **Eighth Amendment – Conditions of Confinement**

              **1.**      **Exhaustion**

Turning to Martinez's Eighth Amendment claim, we will first consider defendants' argument that Martinez failed to exhaust administrative remedies.[7]  Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.  42 U.S.C. § 1997e(a).  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated.  Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs.  Jones v. Bock, 549 U.S. 199, 216 (2007).

---

[7] As noted above, the court did not address defendants' exhaustion argument with respect to Martinez's other claims because summary judgment was warranted on the merits of the claims.

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi, 904 F.3d at 268 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  Once a defendant has established that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him.  Id. at 268.

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804.  (See DC-ADM 804, available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf) (last visited Sept. 20, 2024).[8]  Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen working days from the date of the incident.  Id. § 1(A)(8).  DC-ADM 804

---

[8] The parties agree that DC-ADM 804 is the relevant DOC policy, but neither party has included a copy of the policy in the summary judgment record.  The court takes judicial notice of the policy and its contents as a document that is publicly available on a government website.  See Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).  All citations to DC-ADM 804 will be to the version of the policy that is available on the DOC's website.  The current version of DC-ADM 804 has been in effect since May 1, 2015, and was therefore in effect at all relevant times.

provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). If the inmate is unable to comply with the fifteen-day deadline, he may request an extension of time to file a grievance. Id. § 1(C)(2). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. Id. § 2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. Id. § 2(B)(1)(b).

Defendants argue that Martinez failed to exhaust administrative remedies with respect to his Eighth Amendment claim because he failed to appeal it through final review by SOIGA. (Doc. 90 at 19-20). Martinez argues that he should be deemed to have exhausted administrative remedies because he attempted to appeal an initial grievance about these claims to the facility manager, but the facility manager did not respond to the appeal. (Doc. 99 at 5). Martinez has filed a copy of the appeal he purportedly attempted to submit to the facility manager. (See Doc. 99-9 at 5). He has also attached a copy of an inmate request to staff member that he purportedly submitted approximately two months after submitting the appeal in which he asked why the appeal was never addressed. (Id. at 6).

We find that Martinez's proffered evidence creates a genuine issue of material fact as to whether he exhausted administrative remedies. Martinez has produced evidence from which a fact finder could conclude that the prison failed to respond to his appeal. This failure to respond, if proven, would satisfy Martinez's

obligation to exhaust administrative remedies.  See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) ("[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.").  We accordingly will deny the motion for summary judgment to the extent that it asserts failure to exhaust administrative remedies with respect to the Eighth Amendment claim.

### 2.    Merits

To establish an Eighth Amendment conditions of confinement claim plaintiffs must show (1) that they were subjected to an objectively, sufficiently serious deprivation that resulted in the denial of minimal civilized measures of life's necessities and (2) that defendant prison officials were deliberately indifferent to inmate health or safety.  Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The defendant is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety."  Id. (quoting Farmer, 511 U.S. at 837).  An evaluation of the context of the claim is necessary.  "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone. . . ."  Id. at 304.  Our court of appeals has recognized that "even though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment."  Thomas, 948 F.3d at 133.

We find that genuine issues of material fact preclude summary judgment on the Eighth Amendment claim. Although it appears defendants had a legitimate penological justification for placing Martinez in a dry cell based on their suspicions that he had ingested contraband, there are genuine issues of material fact as to whether the conditions of his confinement in the dry cell violated his constitutional rights. Martinez alleges that while he was in the dry cell, he was forced to remain handcuffed to the floor, that prison staff did not clean him—or allow him to clean himself—after he urinated and defecated on himself, that prison staff applied handcuffs that were so tight that they caused him physical injuries, that they did not allow him to use a blanket despite the outside temperature being below zero degrees, and that officials outside the cell repeatedly mocked him for being cold and for being covered in his own excrement. (See Doc. 1 ¶¶ 11-17). A reasonable finder of fact viewing these facts could conclude that Martinez was subjected to "foul or inhuman" conditions of confinement in violation of the Eighth Amendment. Thomas, 948 F.3d at 133. And there is no basis at this stage to doubt the veracity of Martinez's allegations: defendants argue that the conditions of Martinez's confinement did not violate the Eighth Amendment, but they do not provide any evidence to show that Martinez was not subjected to the conditions of confinement. Hence, we will deny the motion for summary judgment on the Eighth Amendment claim because genuine issues of material fact preclude the entry of summary judgment.

We will grant the motion for summary judgment, however, with respect to defendant Hardy, for lack of personal involvement. A defendant cannot be liable

for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.  <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence.  <u>Id.</u>  There are no allegations in Martinez's complaint as to how Hardy was personally involved in the conditions of confinement that give rise to the Eighth Amendment claim beyond vague and general allegations that he was responsible for his subordinate officers subjecting Martinez to the conditions.  (<u>See</u> Doc. 1 ¶ 25).  Hence, because the claims against Hardy are solely based on his supervisory role as a captain in the prison, we will grant Hardy summary judgment.

## VI.   <u>Conclusion</u>

We will grant in part and deny in part the motion for summary judgment, allow this case to proceed solely as to Martinez's Eighth Amendment claim against defendants Berfield and Evans, and direct the parties to file a joint status report indicating whether they wish to have the case referred to mediation.  If the case is not resolved through mediation, the court will schedule the case for an evidentiary hearing to determine whether defendants can establish the affirmative defense of failure to exhaust administrative remedies.  An appropriate order shall issue.

/S/ C<small>HRISTOPHER</small> C. C<small>ONNER</small>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   September 26, 2024

17