UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALBERT E. MARTINEZ,** : | |
| Plaintiff : | CIV. ACTION NO. 1:20-CV-1759 |
| v. : | (JUDGE MANNION) |
| **JASON BERFIELD**, *et al.*, : | |
| Defendants : | |

## MEMORANDUM

This is a prisoner civil rights case that is before the court for resolution of the issue of whether plaintiff exhausted administrative remedies prior to filing suit. As explained below, based on the court's consideration of testimony and evidence produced during an April 2025 evidentiary hearing and the parties' supplemental briefs following the hearing, the court concludes that actions by prison officials in responding to plaintiff's grievances rendered administrative remedies unavailable. Plaintiff was therefore excused from the duty to exhaust administrative remedies, and this case will be scheduled for a trial on the merits of his claims.

### I.  BACKGROUND

Plaintiff, Albert E. Martinez, was incarcerated in Camp Hill State Correctional Institution ("SCI-Camp Hill") at all relevant times. He filed this

case on September 25, 2020, alleging violations of his First, Fourth, Eighth, and Fourteenth Amendment rights during and after a five-day period when he was placed in a "dry cell" based on suspicions that he was in possession of contraband.[1] (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner.

After the close of pleadings and discovery, defendants moved for summary judgment on July 31, 2023. (Doc. 66). Judge Conner denied the motion without prejudice on November 1, 2023, concluding that additional discovery was necessary before defendants' summary judgment arguments could be resolved. (Docs. 81-82). Judge Conner accordingly reopened discovery and granted defendants leave to file a renewed motion for summary judgment after the completion of discovery. (*Id.*)

Defendants filed a renewed motion for summary judgment on February 29, 2024. (Doc. 85). On September 26, 2024, Judge Conner granted the motion as to all claims and defendants except for Martinez's Eighth

---

[1] "A 'dry cell' is a cell that lacks water—all standing water has been drained from the toilet, the room's water supply has been shut off, and the sink and toilet have been capped to prevent inmate access. An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison. Dry cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved." *Thomas v. Tice*, 948 F.3d 133, 137 (3d Cir. 2020).

2

Amendment claim against defendants Berfield and Evans, holding that there were genuine issues of material fact on both whether Martinez exhausted administrative remedies for the claim and the merits of the claim. (Docs. 103-04). Judge Conner referred the case to mediation, which proved unsuccessful. (Docs. 105-06). The case was reassigned to the undersigned on January 21, 2025, following Judge Conner's retirement from the court.

In February 2025, the court scheduled this case for an evidentiary hearing to decide whether plaintiff exhausted administrative remedies. (Docs. 107, 109). The court conducted the hearing on April 1, 2025, and April 28, 2025.[2] The court ordered supplemental briefs from the parties after the hearing, which were submitted on June 16, 2025, and July 11, 2025. (Docs. 123, 127). The exhaustion issue is now ripe for the court's consideration.

## II.  STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. §1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the

---

[2] Additional proceedings were needed on a second day because a family emergency made one witness unavailable during the first proceeding.

3

procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

District courts "may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Paladino v. Newsome*, 885 F.3d

203, 210 (3d Cir. 2018) (citing *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013)).  Exhaustion is a "preliminary issue for which no right to a jury trial exists."  *Small*, 728 F.3d at 271.

### III.  EVIDENTIARY HEARING

During the evidentiary hearing conducted in April 2025, the court heard testimony from three witnesses: Michael Bell, a grievance officer with the Department of Corrections' Secretary's Office of Inmate Grievances and Appeals ("SOIGA"); Martinez; and Tony Heist, the Superintendent's Assistant and grievance coordinator at SCI-Camp Hill. (Docs. 121-22).

Bell began his testimony with general background on his employment history and the process for filing and appealing a grievance in the DOC's grievance system. (Doc. 121 at 7-9). He then testified that he reviewed Martinez's grievance and appeal history prior to the hearing. (*Id.*) At that point, the court admitted into the record defendants' Exhibit 1, an appeal related to Grievance #787052. (Doc. *Id.* at 11; *see also* Ex. D-1, Doc. 116). Bell reviewed the grievance packet and testified that there was "no outcome" when Bell appealed the grievance to SOIGA because Martinez had not previously appealed the grievance to the prison's superintendent. (Doc. 121 at 11-12).

The court next heard testimony from Martinez, who was called as on cross by defendants. (*Id.* at 15). At the outset of his testimony, the court admitted into the record defendants' Exhibit 2, a grievance packet for Grievance #784833. (*Id.* at 15-16; *see also* Ex. D-2, Doc. 117). Martinez testified that he submitted this grievance to complain about how he was treated in the dry cell, but that it was rejected because it exceeded the DOC's two-page limit for grievances. (*Id.* at 16). After the grievance was rejected, he testified that he filed a "follow-up grievance" that complied with the page limit. (*Id.*) The court admitted this grievance—Grievance #787052—into the record as defendants' Exhibit 3. (*Id.* at 17; Ex. D-3, Doc. 118). Martinez testified that this grievance was rejected because it improperly advanced a claim pursuant to the Prison Rape Elimination Act ("PREA") in a standard grievance and because it grieved multiple issues in the same grievance. (Doc. 121 at 18).

Martinez testified that after Grievance #787052 was rejected, he filed an appeal to the facility manager but did not get a response. (*Id.*) Martinez subsequently filed a request slip asking for a response to his appeal, and when he did not get a response to that, he submitted an appeal to SOIGA because he "felt like [he] had not other recourse but to file the appeal to central office explaining to that that [he] didn't receive the second level

6

appeals." (*Id.*) SOIGA rejected Martinez's appeal for his failure to file an appeal with the facility manager, at which point he filed the complaint that initiated this case. (*Id.* at 19-20). Martinez acknowledged that after SOIGA rejected his appeal, he did not make a second attempt to appeal to the facility manager. (*Id.* at 20). Martinez stated that if he had attempted to do so it would have been rejected as untimely. (*Id.*)

After Martinez provided his general understanding of how grievances are filed by inmates in the prison's restricted housing unit ("RHU"), the court admitted into the record defendants' exhibit 4, a copy of the grievance packet for grievance #787052 that was previously produced to the court during summary judgment proceedings. (*Id.* at 23-24; *see also* Ex. D-4, Doc. 119). Martinez acknowledged that the appeal to the facility manager contained in the exhibit was not marked as received by the facility manager. (*Id.* at 25). Martinez then reviewed the request slip included in the exhibit, and noted that it also did not contain any stamp indicating that it had been received by the facility manager. (*Id.*) Martinez stated that this was because the copy he included in his summary judgment exhibit was a carbon copy he made of the request slip at the time he submitted it. (*Id.* at 25-26).

After Martinez's cross examination ended, the court noted that it could not proceed with Heist's testimony because a family emergency had made

her unavailable. (*Id.* at 28). The court allowed Martinez to return to the stand to provide his testimony for his case in chief. (*Id.* at 28). After clarifying details of his testimony regarding when he submitted his grievances and appeals, the court asked him how long he waited after submitting his appeal to the facility manager before submitting a request slip inquiring about the appeal. (*Id.* at 35). Martinez stated that it was approximately 60 days after he submitted the appeal. (*Id.*) The court then asked Martinez why he had carbon copies of the appeal and request slip relevant to this grievance when he did not appear to have other carbon copies. (*Id.* at 37). Martinez stated that this "might have" been caused by "various situation[s]" where he could not get his property from the prison's property room. (*Id.*)

When the hearing resumed on April 28, 2025, the court heard testimony from Heist. (Doc. 122 at 3). Heist began by testifying as to her duties as the grievance coordinator at SCI-Camp Hill and the process for inmates to submit grievances and related appeals. (*Id.* at 4-5). The court stated that it would take judicial notice of the DOC policy governing the submission of grievances and appeals, DC-ADM 804. (*Id.* at 6).

After reviewing the grievance packet for Grievance #787833, Heist testified that it was rejected by the facility because it pertained to a non-grievable issue—administrative custody procedures—and because it was

8

over two pages long. (*Id.* at 7-8). Heist testified that no further action was taken on this grievance after it was rejected. (*Id.* at 8). Heist then reviewed Grievance #787052, which she testified was rejected because it grieved one or more topics and because it presented a PREA complaint. (*Id.* at 8-9). Heist testified that no further action was take on this grievance either after it was rejected. (*Id.* at 9). She further testified that there was no record of an appeal to the facility manager being filed for either grievance. (*Id.*) Heist reviewed the appeal and request slip that Martinez stated he submitted, and noted that there were no date stamps on the documents indicating that they had been received by the facility manager. (*Id.* at 10-12). Heist testified that the prison never received an appeal to the facility manager from Martinez. (*Id.* at 14).

On cross-examination, Heist acknowledged that it is "possible" that appeals can be misplaced by prison officials while they are being processed. (*Id.* at 16). She further testified that while she was aware of inmates complaining about prison staff intentionally destroying grievances and appeals, she was not personally aware of any incidents in which staff members had done so. (*Id.* at 17).

Martinez subsequently asked Heist about the two relevant grievances in this case. (*Id.* at 30). Heist initially stated that Grievance #787052 was not a resubmission of Grievance #784833, but rather a new and independent

9

grievance. (*Id.* at 30). When pressed, however, Heist acknowledged that she "made a mistake on this one," and that Grievance #787052 should have been processed as a resubmission of Grievance #784833 because it contained the previous grievance number in its first sentence. (*Id.* at 31). Heist testified, however, that the two grievances were "not exactly the same" because Martinez "made a PREA complaint" in the second grievance. (*Id.* at 32). She then noted that the prison's security captain and PREA compliance manager made the decision whether a grievance raised a PREA issue and that this was not her decision. (*Id.* at 34-35).

Heist further testified that in this case, because Martinez had already re-filed his grievance once, he would not have been able to file a second grievance under DOC policy. (*Id.* at 40). She then confirmed that when the second grievance was rejected, it was "at a dead end," though the PREA claim would be investigated separately. (*Id.* at 41-42).

**IV.   FINDINGS OF FACT**

Based on the testimony and evidence adduced during the evidentiary hearing, the court makes the following findings of fact:

1. On January 29, 2019, Martinez filed Grievance #784833, complaining that prison officials had violated his civil rights during

     his confinement in a dry cell earlier in January 2019. (Ex. D-2, Doc. 117 at 2).

2. The grievance was rejected on February 4, 2019, because it challenged administrative custody procedures and because it exceeded the two-page limit for grievances. (Ex. D-2, Doc. 117 at 1).

3. Under the DOC's grievance policy, DC-ADM 804, a grievance that has been rejected "may be re-submitted, using the same grievance number, within five working days of the rejection notice date." DC-ADM 804, §1(A)(20).

4. It is unclear from the record when Martinez was given notice of the rejection of Grievance #784833.

5. On February 15, 2019, Martinez filed Grievance #787052, in which he stated that he was "resubmitting Grievance #784833 for exceeding the two page limit." (Ex. D-1, Doc. 116 at 2).

6. Grievance #787052 complied with the two-page limit. (Ex. D-1, Doc. 116 at 2-3).

7. Grievance #787052 was rejected on February 19, 2019, because it improperly asserted a PREA claim and because it grieved more than two issues. (Ex. D-1, Doc. 116 at 4). The rejection did not

note that the grievance was untimely or that it improperly grieved administrative custody procedures. (*Id.*)

8. The factual allegations that gave rise to the finding that the grievance asserted a PREA claim were essentially unchanged from Grievance #784833 (*Compare* Ex. D-2 Doc. 117 at 2 ("I was also forced to expose my genitals while I was forced to urinate and defecate in front of female correctional officers and staff"), *with* Ex. D-1 Doc. 116 at 1 ("I was forced to expose my genitals while I was forced to urinate and defecate in front of female officers and staff.").

9. Grievance #787052 was mistakenly treated as a new grievance rather than a re-submission of Grievance #787052. (Doc. 122 at 31).

10. No further resubmissions of Grievance #784833 were permitted by DC-ADM 804 after Grievance #787052 was rejected. DC-ADM 804 §1(A)(20).

11. Based on the witnesses' demeanor and mannerisms during the evidentiary hearing, the court finds the testimony of Tonya Heist credible that SCI-Camp Hill never received any appeal from the rejection of Grievance #787052 or Grievance #784833. The

court finds plaintiff's testimony to the contrary that he filed an appeal and never received a response not credible.

## V. CONCLUSIONS OF LAW

Based on the above factual findings and the relevant legal standard, the court makes the following conclusions of law:

1. Defendants met their initial burden to show that plaintiff failed to exhaust administrative remedies based on his failure to file an appeal of either one of his relevant grievances.

2. Tonya Heist's mistake of treating Grievance #787052 as a new grievance rather than a resubmission of Grievance #784833, however, rendered the grievance process unavailable.[3]

---

[3] Although Heist testified credibly that she simply made a mistake in processing Martinez's grievance, her actions effectively created a "blind alley" or "quagmire" that made it impossible to exhaust administrative remedies. *Ross*, 578 U.S. at 644. The initial rejection of Grievance #784833 indicated that it did not comply with the two-page limit, suggesting that if it was resubmitted in a manner that complied with the page limit, it would be accepted as properly filed. When Martinez resubmitted the grievance, however—which was clearly labeled as a resubmission—she treated the grievance as a new grievance that was then rejected on procedural grounds that Martinez had not previously been instructed to correct. (*See* Doc. 116 at 4). The terms of DC-ADM 804 also prevented Martinez from filing any additional re-submissions, *see* DC-ADM 804 §1(A)(20), despite the fact that he was never given the opportunity to cure the defects identified in his first resubmission.

3. Plaintiff is deemed to have exhausted administrative remedies at that point because the grievance process was unavailable. *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (holding that as soon as a prison fails to respond to a grievance in a manner that complies with its own procedural rules, the grievance process is unavailable, and the plaintiff is deemed to have exhausted administrative remedies).

4. Plaintiff's subsequent failure to file an appeal is immaterial because the grievance process was rendered unavailable when prison officials failed to treat his second grievance as a re-submission.

5. Respondent argues to the contrary that under *Talley v. Clark*, 111 F.4th 255, 263-64 (3d Cir. 2024), Martinez was required to request an extension of time to complete the grievance process once the circumstances that made the grievance process unavailable were rectified. (Doc. 127 at 5).

6. This argument is unpersuasive. Unlike *Talley*, where the plaintiff alleged that he could not timely file a grievance because he did not have access to writing materials, the grievance process in this case was rendered unavailable based on prison officials'

14

failure to comply with DC-ADM 804. Further exhaustion of administrative remedies was excused as soon as prison officials failed to comply with the rule. *Shifflett*, 934 F.3d at 365.

## VI. CONCLUSION

For the foregoing reasons, the court concludes that the affirmative defense of failure to exhaust administrative remedies fails. The court will schedule this case for a trial on the merits of plaintiff's claims. An appropriate order follows.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: November 26, 2025**
20-1759-01